ZAINEY, J.
FEBRUARY 24, 2006

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


BG REAL ESTATE SERVICES, INC., ET AL.          CIVIL ACTION

VERSUS                                         NO. 04-3408

MONTICELLO INSURANCE CO., ET AL.               SECTION "A"(2)
```

### ORDER AND REASONS

Before the Court are the following motions: **Motion for Partial Summary Judgment (Rec. Doc. 69)** filed by Monticello Insurance Co. ("Monticello"); **Motion for Partial Summary Judgment (Rec. Doc. 70)** filed by American Equity Insurance Co. ("American Equity"); **Motions to Strike the Affidavit of Ted Marules, Sr. (Rec. Docs. 175 & 177)** filed by Monticello and American Equity. Plaintiffs, BG Real Estate Services, Inc., NOPK LP, NOOB I, GP LLC, Schumann Rafizadeh, Mondona Rafizadeh, and Behzad Erfany ("Plaintiffs"), oppose the motions. The motions, reset for hearing on February 8, 2006, are before the Court on the briefs without oral argument. For the reasons that follow, all three motions are GRANTED.

**I.   BACKGROUND**

Beginning in late October 2001, certain tort plaintiffs filed three purported class actions in Civil District Court for the Parish of Orleans against Plaintiffs herein, Monticello, American Equity, and others.[1]  In these actions the underlying plaintiffs and putative class members alleged that the insured property, the Plaza Tower Building, contained friable asbestos and toxic mold which caused injury and illness to the plaintiffs who worked or visited the building.  One of the individual plaintiffs, Songy, had been diagnosed with mesothelioma.  American Equity was plaintiff BG Real Estate's general liability insurer.  Monticello's insureds were the owners and operators of the Plaza Tower.  Both insurers were sued directly and named as defendants pursuant to Louisiana's Direct Action Statute.

All of the defendant-insurers denied coverage and refused to provide a defense.  In early 2002, Monticello agreed to defend its insureds subject to a reservation of rights.  All insurers filed motions for summary judgment in the underlying litigation asserting that their respective policies did not afford coverage for the claims made therein.  The trial court granted judgment

---

[1] One of the class actions was later converted to a multi-plaintiff toxic tort suit.
The other defendant-insurers were Great Lakes Reinsurance (UK) PLC, Clarendon America Insurance Co., Evanston Insurance Co., and United National Insurance Co.  Plaintiffs have compromised their claims with these defendants as well as defendant Frank and Associates, Inc.

2

for the insurers on the asbestos and punitive damage claims but denied American Equity's motion for summary judgment regarding its organic pathogen exclusion.  The court of appeal and the Louisiana Supreme Court denied writs.

In early 2004, shortly before the Songy claim was to be tried, Monticello and American Equity participated in a class action settlement in which all of the underlying claims against the insurers and the insureds were dismissed with prejudice.  On March 3, 2004, BG Real Estate sent a memo to Messrs. Gary Zwain and Joe Morton[2], which Zwain then forwarded to all insurer counsel, advising that the non-insurer defendants were opposed to a settlement because *inter alia* the settlement would reward bogus lawsuits and fraudulent claims, a motion for summary judgment would be successful, plaintiffs' claims were fabricated and already proven false, and the insurance companies had spent a small fraction of any settlement costs in the preceding 30 months while the litigation was pending.  (Attach. to 3/3/04 Zwain email, Exh. F to Pla. oppo.).  On March 25, 2004, Monticello instructed Zwain to immediately cease all activities in connection with the defense of the tort claims in light of the preliminary settlement.  (3/25/04 Orseck ltr., Exh. G to Pla.

---

[2] Zwain and Morton were retained by Monticello to defend BG Real Estate, Schumann Rafizadeh, Mondona Rafizadeh, and Ben Erfany against the tort claims.  (10/25/04 Zwain ltr., Exh. H to Pla. oppo.).

3

oppo.).

The district court conducted a fairness hearing on October 13, 2004, and found the settlement to be fair, adequate, reasonable, and in the best interests of the class as well as the individual plaintiffs. (AE Exh. B-2). Judgment was entered accordingly. On October 26, 2004, defendant Schumann Rafizadeh (a plaintiff herein) sent a letter to all insurer counsel expressing his being upset at the insurers' unilateral decision to settle the tort litigation given that the settlement was injurious to the interests of the non-insurer defendants and given that the tort claims were defensible. (10/26/04 Rafizadeh ltr., Exh. C to Pla. oppo.). Rafizadeh requested that the judgment be appealed. (Id.). On October 28, 2004, Zwain responded and explained to Rafizadeh that he had been retained by Monticello to defend the allegations contained in the various tort petitions. (10/25/04 Zwain ltr., Exh. H to Pla. oppo.). Zwain suggested that Rafizadeh immediately contact his separately retained counsel should he wish to appeal the judgment approving the settlement. (Id.). The "copied to" section of that letter indicates that Zwain copied Rafizadeh's separately retained counsel on that letter. (Id.). It is undisputed that Plaintiffs did not appeal the judgment approving the settlement or file any pleadings or make any appearance voicing any objection to the settlement during the fairness hearing or during the 6 month time

4

period following the preliminary settlement and preceding the fairness hearing.

On November 18, 2004, Plaintiffs, who were defendants in the tort litigation, filed the instant suit in the Civil District Court for the Parish of Orleans against the defendant insurers. The defendants removed the suit to this Court.  Plaintiffs seek reimbursement of over $300,000 in attorney's fees and expenses that they claim to have spent defending the suits prior to Monticello agreeing to provide a defense in early 2002, loss in value of the Plaza Tower of $13,000,000, loss of $520,000 in brokerage fees, and attorney's fees and expenses incurred in the prosecution of this action.  Plaintiffs claim that none of the insurers properly investigated the tort claims before denying coverage.  Plaintiffs point out that the trial court denied the insurers' coverage motions on the mold claims and they therefore had a duty to defend their insureds.  Plaintiffs claim that the insurers were aware of the legal insufficiency of the medical evidence to support the tort plaintiffs' claims but they chose to settle anyway without properly developing any evidence in support of the insureds' defenses.  Plaintiffs contend that the insurers knew that a settlement would negatively impact the market value of the Plaza Tower, which Plaintiffs ultimately sold for $4,000,000, an alleged loss of $13,000,000.  Plaintiffs allege causes of action for breach of contract, abuse of rights,

5

insurance code violations, promissory estoppel, negligence, breach of fiduciary duty, and negligent misrepresentation.

**II.   DISCUSSION**

*1.   Motions to Strike the Affidavit of Ted Marules, Sr. (Rec. Docs. 175 & 177)*

Plaintiffs have submitted the affidavit of Ted Marules, Sr. in opposition to the pending motions for partial summary judgment.  Marules is a licensed claims adjuster in the State of Texas with 33 years of experience evaluating and adjusting claims.  (Pla. Oppo. Exh. A).  Marules states that he has reviewed the policies at issue, the petitions in the tort litigation, and the pending motions for summary judgment, and based on that review has offered his opinions regarding the merits of this case.  (Id.).

Monticello and American Equity move to strike Marules' affidavit arguing that it contains legal opinions, conclusions of fact, conclusions of law, and medical opinions.  They argue that the contract of insurance is the law between the parties and subject to interpretation by the Court, not by an "all-purpose expert."

In opposition, Plaintiffs argue that Marules' opinions are pure and simple logic and that his opinions reflect the standard procedures used in the insurance industry and customary practices.

6

District courts have wide latitude in determining the admissibility of expert testimony.  Watkins v. Telsmith, Inc., 121 F.3d 984, 988 (5th Cir. 1997) (quoting Eiland v. Westinghouse Electric, 58 F.3d 176, 180 (5th Cir. 1995)).  "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . ."  Fed. R. Evid. 702.  It is well-established in the Fifth Circuit that the federal rules of evidence do not permit an expert to render conclusions of law. Musmeci v. Schwegmann Giant Super Markets, No. 97-2757, 2001 WL 406267, at *1 (E.D. La. Apr. 18, 2001) (citing United States of America v. $9,041,598.68, 163 F.3d 238,255 (5th Cir. 1996)).  The interpretation of a contract of insurance is a question of law for the Court and reliance upon an "expert" opinion is inappropriate.  Amica Mut. Ins. Co. v. Moak, 55 F.3d 1093, 1096 n.5 (5th Cir. 1995).  Testimony by an expert that requires him to construe an insurance contract usurps the function of the Court, and is therefore inadmissible.  Musmeci, No. 97-2757, 2001 WL 406267, at *1 (citing Breezy Point Coop., Inc. v. Cigna Prop. & Cas. Co., 868 F. Supp. 33, 36 (E.D.N.Y. 1994)).  Unless there is a need to employ specific, technical, or other specialized knowledge to clarify terms of art, science, trade, or other

7

industry specific language expert opinion testimony offered to interpret contract language is inadmissible.  Cunningham v. Bienfang, No. 3:00-CV-448-L, 2002 WL 31553976, at *2 (N.D. Tex. Nov. 15, 2002) (citing Amica Mut. Ins., 55 F.3d at 1096).

Based on the foregoing principles of law, the Court will place no reliance on Marules' affidavit.  Marules attempts to instruct the Court on the applicable law, on the requirements of the policies, and he opines as to the very legal issues that are within the sole province of this Court to decide, e.g. whether the insurers had a the right to settle the tort claims.  Marules is not using specialized knowledge to clarify terms of art, science, or trade, which would be unnecessary anyway because the policies at issue require no such aid.  Rather, Marules has rendered an "opinion" wrought with inadmissible legal conclusions.  Accordingly, the motions to strike filed by Monticello and American Equity are GRANTED.

*2.    Monticello's Motion for Partial Summary Judgment (Rec. Doc. 69) & American Equity's Motion for Partial Summary Judgment (Rec. Doc. 70)*

Monticello moves for summary judgment as to Plaintiffs' breach of contract claims, abuse of rights claims, and claims pursuant to La. R.S. 22:1220.[3]  Monticello argues that its policy

---

[3] Monticello's motion for summary judgment does not pertain to Plaintiffs' claim that Monticello breached its contract with respect to the duty to defend.

grants it the absolute right to settle any claim, with or without the insured's consent so its decision to settle cannot constitute a breach of its contract.  Monticello argues that the abuse of rights doctrine applies in very limited circumstances in which the party exercising the right had no legitimate motive for doing so.  Monticello points out that it was a direct defendant in the tort lawsuit and that there were hundreds of class action claims pending against Monticello and the insureds.  Moreover, according to Monticello, Plaintiffs obtained a substantial benefit from the settlement because they were facing total exposure on the mesothelioma claim and first-dollar exposure on claims made for the years when other insurers had issued policies, insurers which were then in liquidation.  Monticello argues that La. R.S. 22:1220 punishes insurers who violate their duty of good faith and fair dealing by failing to settle claims.  Monticello contends that the statute does not provide a cause of action for "wrongful settlement" when the insureds obtain a full dismissal of all claims.

American Equity moves for summary judgment on Plaintiffs' abuse of rights claim.  American Equity argues that the abuse of rights doctrine is inapplicable because under its policy it had an absolute right to settle the tort litigation.  Further, American Equity argues that the requirements for an abuse of rights claim are not met here because for a cause of action under

9

the abuse of rights doctrine to exist, the holder of an individual right must exercise that right to the detriment of another, simply for the sake of exercising it, without any benefit to the person exercising the legal right.  American Equity argues that it received a complete release and benefit from settling the claims and eliminated substantial ongoing costs and legal fees in defending the insureds.  American Equity points out that Plaintiffs also benefitted because they obtained complete releases and avoided the potential of having to pay the entire judgment themselves given the possibility that coverage defenses would succeed at trial.

In opposition, Plaintiffs concede that the policies at issue afford the insurer the right to settle a claim without the consent of the insured.  However, they argue that the right to settle is not absolute and can only be exercised after an evaluation of damages and liabilities and is contingent upon a finding of coverage under the policy.  Plaintiffs contend that where the insurer has denied coverage and a defense, or where there is insufficient evidence of the insured's liability, an insurer is not entitled to settle a claim over the objection of the insured.[4]

---

[4] In support of the foregoing contentions Plaintiffs cite only to the affidavit of Ted Marules, Sr. which the Court has stricken.  Plaintiffs do not cite to any specific language in the policies or to any legal authority to support their contentions.

As for the abuse of rights doctrine, Plaintiffs argue that there are genuine issues of material fact with respect to each of the conditions that would support such a claim.  Plaintiffs concede that no insurance company has been found liable under a theory of abuse of rights for settling a case but there is always a first time. Plaintiffs argue that the insurers had no legitimate motive to settle the Songy asbestos claim because the trial court had already determined that the policies excluded coverage for exposure to asbestos.  Thus, settling that claim over the objection of the insureds constituted meddling in their business affairs.  Plaintiffs assert that there is no precedent in Louisiana law for allowing an insurer to settle a case over the objections of the insured where the insurer has no exposure. Plaintiffs contend that there is no dispute that the settlement harmed them because the value of the Plaza Tower was diminished in value by $14,000,000 as a result of the settlement.[5]  As for the remaining mold claims, Plaintiffs argue that there was no credible evidence that the Plaza Tower had mold.  Even assuming that there was mold, Plaintiffs argue that there was no scientific evidence to link the alleged symptoms of any plaintiff to mold exposure at the Plaza Tower.  Plaintiffs assert that the

---

[5] In their Second Amended Complaint at ¶ V Plaintiffs allege that the loss in market value of the Plaza Tower was $13,000,000. In their memorandum in opposition at p. 7 Plaintiffs state that the loss in value was $14,000,000.

11

insurers settled out of concern over Louisiana politics rather than an evaluation of liability and damages.

Plaintiffs also dispute the contention that the insurers settled to cap litigation expenses. Plaintiffs point out that American Equity and Monticello contributed $350,000 and $575,000, respectively to settle the tort claims. Plaintiffs assert that it is a question of fact as to whether the settlements saved the insurers anything on attorney's fees. Plaintiffs also claim that shortly before the settlement Monticello had advised that its policy limits were exhausted so Monticello received no benefit from the settlement. Likewise, Plaintiffs contend that American Equity's policy became effective after the underlying suits were filed so it received no benefit from compromising the tort claims.

Plaintiffs argue that Monticello withdrew the insureds' defense in order to silence their opposition to the class certification and settlement. Plaintiffs contend that when they attempted to attend a May 3rd hearing to object to settlement a court official told them that there was no hearing. They claim that they were not notified of any other hearings or court appointments until after the judgment was signed. (Pla. oppo. Exh. E, Rafizadeh affid. at 2).

In reply, American Equity asserts that it did receive a benefit from the settlement because it was released with

12

prejudice from all of the actions and that the settlement eliminated any exposure on additional defense costs and losing on the merits.  American Equity contends that the instant lawsuit is a collateral attack on the state court judgment because the state court judgment specifically found that the settlement was fair and entered into in good faith without collusion.

American Equity disputes Plaintiffs' contention that the market value of the Plaza Tower was reduced by $14,000,000 as a result of the settlement.  They contend that Plaintiffs had entered into an agreement to sell the building for $4,000,000 months before the settlement.  American Equity also disputes Plaintiffs contention that the Plaza Tower was mold-free.  They state that the plaintiffs' expert in the tort litigation reached a contrary conclusion and point out that the trial judge had granted a motion for an adverse inference due to spoilation of evidence because certain Plaintiffs herein were found to have delayed inspections and to have cleaned the premises in violation of a court order.

**A.   Abuse of Rights (Monticello and American Equity)**

The abuse of rights doctrine is a "civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights."  St. Germain v. Coulon, 887 So. 2d 608, 613 (La. App. 5th Cir. 2004) (quoting Wagner v. Fairway Villas Condominium

13

Assocs., Inc., 813 So. 2d 512, 518 (La. App. 3d Cir. 2002)).  The abuse of rights doctrine applies when one of the following conditions is met:

> 1) if the predominant motive for exercise of the right is to cause harm;
>
> 2) if there is no serious or legitimate motive for exercise of the right;
>
> 3) if the exercise of the right violates moral rules, good faith, or elementary fairness; or
>
> 4) if the exercise of the right is for a purpose other than that for which it was granted.

Id. (citing Truschinger v. Pak, 513 So. 2d 1151 (La. 1987)).

The Court finds no merit to Plaintiffs' contention that the abuse of rights doctrine provides an avenue for Plaintiffs to recover against Monticello and American Equity for "wrongful settlement."  The Court is not persuaded that any one of the preceding conditions are met in this case.

First, assuming *arguendo* that Plaintiffs were in fact harmed from the settlement,[6] there is no evidence whatsoever that the

---

[6] American Equity asserts that Exhibit C to its reply memorandum is an Agreement to Purchase and Sell the Plaza Tower building for $4,000,000 *prior to* the settlement.  However, the property description in the document refers to Unit 1 of the Bahar Towers Condominium, which the Court assumes is some other property owned by Plaintiffs.

14

insurers' predominate *motive* in settling the cases was to harm their insureds. American Equity paid $350,000 to compromise the claims and Monticello paid $575,000, in addition to the defense costs it had already incurred. (Pla. oppo. at 6). It borders on ludicrous to suggest that these two insurers were so intent on harming Plaintiffs that they would pay out such large sums of money to do so.

Second, given that Monticello and American Equity were both named defendants in the underlying suits they undoubtedly had a legitimate motive in compromising the tort claims. Although American Equity was asserting coverage defenses it certainly had no guarantee that it would prevail on those defenses--in fact, the trial judge had denied its motion for summary judgment as to the mold claims. Thus, while Plaintiffs contend that American Equity had no exposure because the tort claims arose after the inception of its policy, apparently the trial judge did not agree. American Equity surely was motivated to cap its exposure at a finite amount rather than hope to prevail at trial on the merits.

Monticello, on the other hand, does not dispute the fact that it had no additional financial exposure because its policy limits had been exhausted prior to the settlement. Monticello never really explains why it then paid $575,000 over and above its policy limits to settle the tort claims. Monticello states

15

only that it entered the settlement to protect its insureds from the risk of an excess judgment for which they had no liability coverage and "to protect its own interests in the ongoing litigation," a statement which it does not explain. (Mont. Exh. —1, Mills affid.). The Court is not convinced that the laudable motive of protecting Plaintiffs from a risk that Monticello did not insure, i.e., an excess judgment, prompted Monticello to pay out over a half million dollars in excess of its policy limits. Nevertheless, because Monticello was a named defendant in the tort lawsuit it had a legitimate motive to bring the underlying lawsuits to complete repose vis à vis the tort plaintiffs.

Nor has the Court been presented with a scintilla of evidence that the insurers' decision to settle violated moral rules, good faith, or elementary fairness or that they settled the tort litigation for a purpose other than to bring complete finality to the tort lawsuits in which they were named defendants. As a result of the settlement Plaintiffs received complete releases from liability including on those claims for which they had no coverage such as the Songy asbestos claim. Moreover, given that Monticello was the only insurer that had provided a defense and its aggregate policy limits were exhausted, Plaintiffs would have surely incurred substantial legal fees in defending themselves against two class actions and an additional 60 individual claims. Although Plaintiffs remain

16

convinced that tort claims were unfounded the fact-finder might have disagreed.  If Plaintiffs had been on the receiving side of an adverse judgment they could have potentially incurred even greater financial losses in satisfying a judgment *in addition to* a reduction in the market value of the Plaza Tower.

In sum, the Court finds no basis to deny Monticello and American Equity summary judgment on the abuse of rights claim. Further, this Court has no intention of trying the issues that were laid to rest in the settlement of the tort claims, i.e., whether or not the Plaza Tower had mold and whether or not the tort plaintiffs' claims were legitimate.  This Court will not try the underlying tort claims in an attempt to determine whether the plaintiffs would have succeeded with a jury.  Plaintiffs herein took no action to "opt out" of the settlement or to object to the settlement notwithstanding that they are undoubtedly sophisticated business people who had separately retained competent counsel who were well aware of their clients' objections.  If Plaintiffs were unhappy with the settlement then the appropriate course of action would have been to file an appropriate pleading or motion in the state court litigation within the required time frame.  Instead Plaintiffs obtained complete releases and then filed this lawsuit which is in large part a collateral attack on the state court judgment.  The motions for summary judgment are therefore GRANTED as to the

17

abuse of rights claims.

> **B. Breach of Contract (Monticello only)**

Monticello's policy states that "'[w]e' may at 'our' discretion investigate any 'occurrence' and settle any 'claim' or 'suit' that may result." (Monticello Exh. M-1(A) at 1). This right to settle clause places no conditions on the decision to settle. Plaintiffs assert that the policy language required Monticello to settle only after an evaluation of damages and liabilities. However, Plaintiffs cite to no specific language in the policy that imposed any such limitation on Monticello's right to settle. An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. Pareti v. Sentry Indem. Co., 536 So. 2d 417, 420 (La. 1988) (citing Carney v. Am. Fire & Indem. Co., 371 So. 2d 815 (La. 1979)). Courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language. Id. (citing Monteleone v. American Emp. Ins. Co., 120 So. 2d 70 (La. 1960); Edwards v. Life & Cas. Ins. Co., 29 So. 2d 50 (La. 1946)). Plaintiffs simply did not bargain for a policy that allowed them to make the final decision on settlement.

Nevertheless, the Court sees no basis to conclude that Monticello settled the tort litigation without making an evaluation of damages and liabilities. The tort litigation had

18

been pending several years when Monticello finally settled the claims so it would seem that Monticello hardly rushed to judgment in this case.  Plaintiffs' own convictions regarding the likely failure of the claims in the tort litigation is not a basis for concluding that Monticello did not evaluate the liabilities and damages associated with the claims.  Additionally, while Plaintiffs characterize part of Monticello's decision to settle as "Louisiana politics," a prudent advocate will certainly consider the forum in which his case will be tried when making the decision to settle.

Finally, Plaintiffs' contention that an insurer's right to settle is contingent upon a finding of coverage under the policy is unsupported by any legal authority.  Moreover, if Plaintiffs were correct then claims which involve a coverage dispute could never be settled short of a trial on the merits.  Such a result would be antithetical to the concept that the law favors compromise.  Consequently, Plaintiffs have no claim for breach of contract based on the Monticello's decision to settle. Monticello's motion for partial summary judgment is therefore GRANTED as to that claim.

    **C.   La. R.S. 22:1220 (Monticello only)**

Plaintiffs agree with Monticello's contentions pertaining to La. R.S. 22:1220.  However, Plaintiffs have clarified that their claims pursuant to La. R.S. 22:1220 are for Defendants' failure

19

to reimburse Plaintiffs for the legal expenses that they incurred prior to the date that Monticello finally agreed to provide a defense. (Pla. Oppo. at 14). Monticello has not moved for summary judgment on the reimbursement claims. Thus, Monticello's motion for partial summary judgment is GRANTED as to any "wrongful settlement" claims brought under La. R.S. 22:1220.

Accordingly;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 69)** filed by Monticello Insurance Co. should be and is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 70)** filed by American Equity Insurance Co. should be and is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the **Motions to Strike the Affidavit of Ted Marules, Sr. (Rec. Docs. 175 & 177)** filed by Monticello and American Equity should be and are hereby **GRANTED**.

\* \* \* \* \* \* \* \*

*[signature]*