ZAINEY, J.
MARCH 8, 2006

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


BG REAL ESTATE SERVICES, INC., ET AL.            CIVIL ACTION

VERSUS                                           NO. 04-3408

MONTICELLO INSURANCE CO., ET AL.                 SECTION "A"(2)
```

**ORDER AND REASONS**

Before the Court is **Counter-Defendants' Motion for Summary Judgment on Defendants' Counterclaim (Rec. Doc. 76)** filed by plaintiffs BG Real Estate Services, Inc., NOPK LP, NOOB I, GP LLC, Schumann Rafizadeh, Mondona Rafizadeh, and Behzad Erfany ("Plaintiffs"). Defendant Monticello Insurance Co. ("Monticello") opposes the motion. The motion, reset for hearing on February 8, 2006, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART.

**I.   BACKGROUND**

Beginning in late October 2001, certain tort plaintiffs filed three purported class actions in Civil District Court for

the Parish of Orleans against Plaintiffs herein, Monticello, American Equity, and others.[1]  In these actions the underlying plaintiffs and putative class members alleged that the insured property, the Plaza Tower Building, contained friable asbestos and toxic mold which caused injury and illness to the plaintiffs who worked or visited the building.  One of the individual plaintiffs, Songy, had been diagnosed with mesothelioma.  American Equity was plaintiff BG Real Estate's general liability insurer.  Monticello's insureds were the owners and operators of the Plaza Tower.  Both insurers were sued directly and named as defendants pursuant to Louisiana's Direct Action Statute.

All of the defendant-insurers denied coverage and refused to provide a defense.  In early 2002, Monticello agreed to defend its insureds subject to a reservation of rights to recoup defense costs for claims not covered.  All insurers filed motions for summary judgment in the underlying litigation asserting that their respective policies did not afford coverage for the claims made therein.  The trial court granted judgment for the insurers on the asbestos and punitive damage claims but denied American Equity's motion for summary judgment regarding its organic

---

[1] One of the class actions was later converted to a multi-plaintiff toxic tort suit.
    The other defendant-insurers were Great Lakes Reinsurance (UK) PLC, Clarendon America Insurance Co., Evanston Insurance Co., and United National Insurance Co.  Plaintiffs have compromised their claims with these defendants as well as defendant Frank and Associates, Inc.

pathogen exclusion (mold claims).  The court of appeal and the Louisiana Supreme Court denied writs.

Monticello had also filed a motion for summary judgment on the mold claims.  Before the trial judge ruled on that motion Monticello filed a declaratory judgment action in the Southern District of Texas seeking a ruling that *inter alia* the mold claims were excluded from coverage.  (Oppo. Exh. 5).  That complaint was filed on December 15, 2003, and on January 14, 2004, Monticello withdrew its motion for summary judgment as to the mold claims "reserving the right to raise the issue in the future."  (Oppo. Exh. 4).

In early 2004, shortly before the Songy claim was to be tried, Monticello and American Equity participated in a class action settlement in which all of the underlying claims against the insurers and the insureds were dismissed with prejudice. Monticello paid $575,000 to settle the claims notwithstanding that its policy limits were nearly exhausted.  On March 3, 2004, BG Real Estate sent a memo to Messrs. Gary Zwain and Joe Morton[2], which Zwain then forwarded to all insurer counsel, advising that the non-insurer defendants were opposed to a settlement because *inter alia* the settlement would reward bogus lawsuits and

---

[2] Zwain and Morton were retained by Monticello to defend BG Real Estate, Schumann Rafizadeh, Mondona Rafizadeh, and Ben Erfany against the tort claims.  (10/25/04 Zwain ltr., Exh. H to Pla. oppo.).

3

fraudulent claims, a motion for summary judgment would be successful, plaintiffs' claims were fabricated and already proven false, and the insurance companies had spent a small fraction of any settlement costs in the preceding 30 months while the litigation was pending.  (Attach. to 3/3/04 Zwain email, Exh. F to Pla. oppo.).  On March 25, 2004, Monticello instructed Zwain to immediately cease all activities in connection with the defense of the tort claims in light of the preliminary settlement.  (3/25/04 Orseck ltr., Exh. G to Pla. oppo.).

The district court conducted a fairness hearing on October 13, 2004, and found the settlement to be fair, adequate, reasonable, and in the best interests of the class as well as the individual plaintiffs.  (AE Exh. B-2).  Judgment was entered accordingly.  On October 26, 2004, defendant Schumann Rafizadeh (a plaintiff herein) sent a letter to all insurer counsel expressing his being upset at the insurers' unilateral decision to settle the tort litigation given that the settlement was injurious to the interests of the non-insurer defendants and given that the tort claims were defensible.  (10/26/04 Rafizadeh ltr., Exh. C to Pla. oppo.).  Rafizadeh requested that the judgment be appealed.  (Id.).  On October 28, 2004, Zwain responded and explained to Rafizadeh that he had been retained by Monticello to defend the allegations contained in the various tort petitions.  (10/25/04 Zwain ltr., Exh. H to Pla. oppo.).

Zwain suggested that Rafizadeh immediately contact his separately retained counsel should he wish to appeal the judgment approving the settlement. (Id.). The "copied to" section of that letter indicates that Zwain copied Rafizadeh's separately retained counsel on that letter. (Id.). It is undisputed that Plaintiffs did not appeal the judgment approving the settlement or file any pleadings or make any appearance voicing any objection to the settlement during the fairness hearing or during the 6 month time period following the preliminary settlement and preceding the fairness hearing.

On November 18, 2004, Plaintiffs, who were defendants in the tort litigation, filed the instant suit in the Civil District Court for the Parish of Orleans against the defendant insurers. The defendants removed the suit to this Court. Plaintiffs seek reimbursement of over $300,000 in attorney's fees and expenses that they claim to have spent defending the suits prior to Monticello agreeing to provide a defense in early 2002, loss in value of the Plaza Tower of $13,000,000, loss of $520,000 in brokerage fees, and attorney's fees and expenses incurred in the prosecution of this action. Plaintiffs claim that none of the insurers properly investigated the tort claims before denying coverage. Plaintiffs point out that the trial court denied the insurers' coverage motions on the mold claims and they therefore had a duty to defend their insureds. Plaintiffs claim that the

5

insurers were aware of the legal insufficiency of the medical evidence to support the tort plaintiffs' claims but they chose to settle anyway without properly developing any evidence in support of the insureds' defenses. Plaintiffs contend that the insurers knew that a settlement would negatively impact the market value of the Plaza Tower, which Plaintiffs ultimately sold for $4,000,000, an alleged loss of $13,000,000. Plaintiffs allege causes of action for breach of contract, abuse of rights, insurance code violations, promissory estoppel, negligence, breach of fiduciary duty, and negligent misrepresentation.

On May 12, 2005, the judge presiding over Monticello's declaratory judgment action in the Southern District of Texas transferred the case to this Court for consolidation with BG Real Estate's case against the insurers. (Oppo. Exh. 6).

Monticello filed a counter claim against "NOOB1, LP; Noob 1, GP, LLC; Schumann Rafizadeh, and Behzad Erfany," (Rec. Doc. 17 ¶ 2), seeking reimbursement of the defense costs and expenses it incurred in defending the insureds in the underlying litigation. Monticello asserts that it is entitled to reimbursement because its policy did not provide coverage for the claims made against the insured. Monticello also seeks payment of the $5,000 deductible for each claim pursuant to the terms of its policy.

## II.  **DISCUSSION**

Plaintiffs move for summary judgment on Monticello's

6

counterclaim.[3]  Plaintiffs argue that Monticello had a duty to defend against the mold claims because the petition did not unambiguously exclude coverage.  Plaintiffs argue that Monticello waived any coverage dispute by withdrawing its motion for summary judgment on the coverage issue (in the underlying litigation), and then by settling those very claims over the insureds' objections.  Assuming that Monticello did preserve its right to recoup defense costs, Plaintiffs argue that any such right can only be asserted against those parties in contractual privity (BG Real Estate Services, Inc. and NOOB I, GP, LLC) and not against any additional insureds.

Regarding Monticello's attempt to recover the policy deductible, Plaintiffs argue that they were not "legally obligated" to pay anything because Monticello settled the tort claims over Plaintiffs' objections.  Plaintiffs argue that under Louisiana law Monticello is not entitled to reimbursement of the policy deductible.

In opposition, Monticello argues that its policy requires that the insureds reimburse for defense costs for claims "not even potentially covered under the policy."  Monticello asserts that it gave the insureds written notice of its coverage defenses and agreed to undertake the defense under a reservation of rights

---

[3] Plaintiffs have withdrawn their motion for summary judgment as to American Equity.  (Notice of Motion Withdrawal, Rec. Doc. 122).

to seek reimbursement of defense costs and expenses.  Monticello asserts that it withdrew its motion for summary judgment regarding coverage on the mold claims because it filed the declaratory judgment action in Texas, which was later transferred to this Court.  Monticello asserts that when it withdrew its motion for summary judgment it expressly reserved the right to raise the issue in the future.  Therefore, according to Monticello, the coverage issue has not been adjudicated and remains a viable issue in this Court.  Further, Monticello argues that it did not waive the coverage issue by settling the underlying litigation because when Monticello undertook the representation it did so under a reservation of rights to seek reimbursement of defense costs.  Monticello contends that *all* insureds are liable.

Regarding payment of the deductible, Monticello argues that its policy makes payment of the deductible unconditional.  Monticello argues that the authorities cited by Plaintiffs are inapplicable because they are based upon policies with different language from that contained in the Monticello policy.

### *Reimbursement of Defense Costs*

Plaintiffs' motion with respect to the reimbursement of defense costs is GRANTED because the Court is persuaded that Monticello waived that claim when it settled the underlying claims in state court without expressly preserving the claim.

The coverage question on the mold claims was an integral part of the state court litigation.  *All* of the claims that were before the state court were concluded with the settlement except for those expressly preserved as part of the settlement.  Monticello points to nothing *in the settlement agreement* that effected a preservation of its coverage defenses.  Monticello did in fact reserve the right to raise the coverage issue "in the future" when it withdrew its motion for summary judgment in state court.  However, that reservation of rights was clearly intended to ensure that Monticello did not inadvertently waive the coverage issue while the underlying litigation was pending.  That reservation of rights is insufficient to withstand the res judicata effect of a settlement which has the legal efficacy of a final judgment.  An express reservation as part of the settlement agreement was particularly important under these facts where Monticello willingly paid out $575,000 to settle claims for which it faced little or no additional future exposure--conduct that could easily be characterized as inconsistent with a coverage defense.

    Moreover, Monticello's separate federal lawsuit regarding coverage did not preserve the claim because the declaratory judgment action did not "remove" the issue to federal court.  Instead, Monticello had the coverage issue pending in two courts clearly hoping for a speedy, final judgment in its favor from the

federal court in order to raise issue preclusion as a defense in the state court litigation.  Conversely, had the state court ruled against Monticello and issued a final judgment that encompassed the coverage issue then Monticello's federal suit would have been subject to immediate dismissal due to collateral estoppel.  Because Monticello chose to settle the claims and made no express reservation with respect to the coverage issue, the coverage issue was waived notwithstanding the parallel litigation pending in federal court.

    Consequently, the coverage issue is not an unadjudicated issue that remains viable in this Court.  As the Court explained when it granted Monticello's and American Equity's motions for partial summary judgment this Court has no intention of trying the issues that were laid to rest in the settlement of the tort claims.  This Court will not try the underlying tort claims or the defenses thereto in an attempt to determine whether the arguments of either party would have succeeded with a jury.  Just as Plaintiffs were bound by the settlement for failing to "opt out," Monticello is likewise bound by the settlement for failing to expressly carve the coverage issue out of the settlement.  This Court will permit neither party to use this litigation to collaterally challenge the state court settlement.  Plaintiffs' motion for summary judgment on the reimbursement issue is therefore GRANTED.

10

*Policy Deductible*

Plaintiff's motion with respect to payment of the deductible is DENIED because the Court can find no authority to support Plaintiffs' blanket contention that an insured must consent to a settlement in order to be liable for the deductible. Plaintiffs' sole cited authority is <u>Employers' Surplus Lines Ins. Co. v. City of Baton Rouge</u>, 362 So. 2d 561 (La. 1978). However, the specific policy in that case provided that the deductible applied to sums that the insured became "legally obligated" to pay. Because an insured only becomes "legally obligated" to pay when a court issues a final judgment, and because a settlement does not constitute a final determination of the legal obligation to pay, the insured would have to consent to a settlement in order for the deductible to apply. <u>Id.</u> at 565. In <u>Thomas v. Gallant Insurance Co.</u>, 789 So. 2d 74, 78 (La. App. 4th Cir. 2001), the Fourth Circuit recognized that the language of the policy in <u>Employers' Surplus</u> dictated the result in that case. However, where a policy does not contain language that limits the applicability of the deductible to those cases where the insured consents to a settlement, the insured will owe the deductible following a settlement notwithstanding that he does not consent. <u>See</u> <u>id.</u>

An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties. <u>Pareti v.</u>

11

Sentry Indem. Co., 536 So. 2d 417, 420 (La. 1988) (citing Carney v. Am. Fire & Indem. Co., 371 So. 2d 815 (La. 1979)).  Unlike the policy in Employers' Surplus Monticello's policy does not contain the "legally obligated" language that was key to the court's decision in that case.[4]  However, the Court does note that where Monticello's policy requires a deductible to paid per claim, the policy specifically refers to "damages" paid as opposed to "sums" paid.  (Mont. Exh. 1 at 14).  The Court questions whether funds paid in settlement are included in the term "damages."  Monticello has only included excerpts of its policy so the Court cannot determine whether the policy specifically defines "damages" to include sums paid in settlement.  Nevertheless, the policy does unconditionally apply the deductible to defense costs and Monticello clearly did incur substantial defense costs on behalf of Plaintiffs.  Whether the deductible vis à vis defense costs would apply on a per claim basis is not an issue currently before the Court.  Based on the foregoing, Plaintiffs are not entitled to summary judgment on the deductible claim and their motion regarding same is DENIED.

Accordingly;

**IT IS ORDERED** that the **Counter-Defendants' Motion for**

---

[4] Monticello's policy does actually use the term "legally obligated to pay" when defining the term "legal damages."  (Mont. Exh. 1 at 20).  However, the deductible section of the policy refers only to "damages."  (Id. at 14).

12

**Summary Judgment on Defendants' Counterclaim (Rec. Doc. 76)** filed by plaintiffs BG Real Estate Services, Inc., NOPK LP, NOOB I, GP LLC, Schumann Rafizadeh, Mondona Rafizadeh, and Behzad Erfany should be and is hereby **GRANTED IN PART AND DENIED IN PART** as explained above.

* * * * * * * *

*[Signature: Jay C. Zainey]*